IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MICHAEL B. BAILEY, ) | |
| ) | |
| Movant, ) | |
| ) | No. 2:16-cv-02750-TLP-tmp |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER DENYING MOTION UNDER 28 U.S.C. § 2255,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND
DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Movant Michael B. Bailey[1] moves in this Court to vacate his sentence under 28 U.S.C. § 2255 ("§ 2255 Motion"). (ECF No. 1.) The § 2255 Motion is now ripe. For the reasons below, Movant's § 2255 Motion is DENIED.

## BACKGROUND

**I. Criminal Case Numbers 2:09-cr-20051 BBD and 2:09-cr-20465-BBD**

A federal grand jury in the Western District of Tennessee indicted Movant on one count of carjacking ("Count 1") and one count of using and carrying a firearm in relation to a crime of violence ("Count 2") in case number 2:09-cr-20051-BBD ("Case 1"). (Indictment, Case No. 2:09-cr-20051-BBD, Criminal ("Cr.") ECF No. 1.) Another federal grand jury later indicted Movant on one count of mailing a threatening communication to a federal judge and one count

---

[1] Movant, Tennessee Department of Correction prisoner number 221117, is an inmate at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee.

of intentionally conveying false and misleading information about the letter containing anthrax in case number 2:09-cr-20465-BBD ("Case 2"). (Indictment, Case No. 2:09-cr-20465-BBD, Cr. ECF No. 1.)

Movant then pleaded guilty to both counts in Case 1 and guilty to the count involving mailing threatening communications to a federal judge in Case 2. (Case No. 2:09-cr-20051-BBD, Cr. ECF Nos. 33 & 35, Case No. 2:09-cr-20465-BBD, Cr. ECF Nos. 24 & 25.)

The written plea agreement in Case 1 provided that the United States would recommend that Movant serve the sentence on Count One concurrently with the sentence imposed in Case 2 and would recommend that Movant receive a reduction in his sentencing guideline offense level for acceptance of responsibility. (Cr. Case No. 2:09-20051-BBD, Cr. ECF No. 34.)

The written plea agreement in Case 2 contained Movant's affirmation that his plea of guilty to Count One was knowing and voluntary and provided that the United States would move for dismissal of Count Two in exchange for Movant's guilty pleas in the two criminal cases at sentencing and would recommend that he receive the maximum reduction for acceptance of responsibility reduction on Count One in Case 2. (*Id.*, Cr. ECF No. 25.)

The Court held one sentencing hearing for both cases. (Case No. 2:09-cr-20051-BBD, Cr. ECF No. 39, Case No. 2:09-cr-20465-BBD, Cr. ECF No. 31.) At that sentencing hearing, the judge determined that Movant was entitled to the full three-point reduction for acceptance of responsibility leading to an advisory guideline range of 262 to 327 months in prison. (Sentencing Transcript ("Tr."), Case No. 2:09-cr-20051, Cr. ECF No. 43 at PageID 74–75.) The court then sentenced Movant to an effective term of imprisonment of 264 months. For Case 1, the judge imposed a sentence of 180 months in prison on Count One and eighty-four months consecutively on Count Two. The judge imposed a sentence of 120 months in prison in

Case 2; to run concurrently with the sentence imposed in Case 1. (Case No. 2:09-cr-20051-BBD, Cr. ECF No. 40, Case No. 2:09-cr-20465-BBD, Cr. ECF No. 32.) Movant did not appeal.

## II. The § 2255 Motion

Six years after the court sentenced Movant, he filed his § 2255 Motion alleging:

(1)  that he should have gone to trial and not pleaded guilty in Case 1;

(2)  that the weapon used during the carjacking was an air gun, not a firearm; and

(3)  that the Court did not inform him of his right to appeal his sentence.

(§ 2255 Motion, |ECF No. 1 at PageID 3–5.) The Court now reviews this motion.

## **LEGAL STANDARD**

Federal courts have authority to vacate, set aside, or correct the sentences of individuals in federal custody. 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant that relief only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

28 U.S.C. § 2255(f) controls the time to file for this relief and states:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)  the date on which the judgment of conviction becomes final;

(2)  The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).

"[F]or purposes of collateral attack, a conviction becomes final at the conclusion of direct review." *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001); *see also United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002). The Supreme Court has held that, for postconviction relief, "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

## **ANALYSIS**

The Court must first determine when Movant's conviction became final. Because he did not take a direct appeal, his convictions became final on September 23, 2010, fourteen days after the entry of judgment. *See* Fed. R. App. P. 4(b)(1)(A). The running of the § 2255 statute of limitations started on that date and expired one year later—September 23, 2011. Movant did not place this § 2255 Motion in the prison mail system until September 13, 2016.

Because the motion is time barred, the Court must determine whether Movant presents grounds for the application of equitable tolling. See *Hargrove v. Brigano*, 300 F.3d 717, 719 (6th Cir. 2002) (stating that the § 2255 limitations period is subject to equitable tolling). "[T]he doctrine of equitable tolling allows federal courts to toll a statute of limitations when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (internal quotation marks omitted). But "the doctrine of equitable tolling is used sparingly by the federal courts." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010); *see also Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (same); *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). "The party

4

seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson*, 624 F.3d at 784. A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Movant admits that the motion to vacate is untimely, but he contends that the limitations period should be equitably tolled because he received the maximum sentence possible in Case 1. (§ 2255 Motion, ECF No. 1 at PageID 4.) The United States in response opposes the application of equitable tolling. (Response, ECF No. 8 at PageID 25–26.) In his reply, Movant alleges that he missed the statutory deadline because he was on strong psychiatric medicine, could not function in daily life activities, and was unaware of the statute of limitations. (Reply, ECF No. 9 at PageID 40–41.)

The Sixth Circuit has recognized that, when mental and physical illnesses prevent a petitioner from pursuing his legal rights, they can constitute extraordinary circumstances which warrant the equitable tolling of the statute of limitations. *See, e.g.*, *Plummer v. Warren*, 463 Fed. App'x 501, 506 (6th Cir. 2012) (citing *Price v. Lewis*, 119 Fed. App'x 725, 726 (6th Cir. 2005)). *See also Martinez v. White*, 2017 WL 4848824 at * 4 (W.D. Ky. Oct. 26, 2017). That said, a habeas petitioner must allege more than the "mere existence of physical or mental ailments" to invoke the equitable tolling of the AEDPA's statute of limitations. *Brown v. McKee*, 232 F. Supp. 2d 761, 767 (E.D. Mich. 2002) (quoting *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000)). The habeas petitioner has the burden of showing that his physical or mental health problems rendered him unable to file a habeas petition during the one-year limitations period. *Id.*; *see also Price*, 119 Fed. Appx. at 726 ("Illness—mental or

5

physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period."); *Williams v. Palmer*, 2010 WL 889963 at * 2 (W.D. Mich. March 10, 2010) ("It is important to note at the outset that, although a mental or physical illness does warrant equitable tolling in appropriate circumstances, the Petitioner bears the burden of introducing evidence of the illness.")

Movant argues, in conclusory fashion, that his mental health medication prevented him from timely filing. (Reply, ECF No. 9 at PageID 40–41.) But he has not provided an affidavit or authenticated medical records that show he was unable to perform his daily activities during the relevant period, September 2010 to September 2011. Although the record in Movant's criminal cases contains evidence supporting his assertion that he suffers from a mental illness requiring medication, he was taking that same medication when he appeared before the sentencing judge to enter his guilty pleas and to stand for sentencing. (Presentence Report ("PSR") at ¶ 78, Sentencing Tr., Case No. 2:09-cr-20051, Cr. ECF No. 43 at PageID 69.)

The criminal record contradicts Movant's contention that he cannot perform daily activities when he is taking his medication. He signed a plea agreement revealing that his plea was voluntary, that he fully understood the charges, and that he understood his plea agreement. (Case No. 2:09-cr-20465-BBD, Cr. ECF No. 25.) The judge determined that Movant's pleas were knowing and voluntary and accepted his pleas. (Case No. 09-cr-20051-BBD, Cr. ECF No. 26, Case No. 2:09-cr-20465-BBD, Cr. ECF No. 35.) During the sentencing hearing, Movant told the judge that he was satisfied with his attorney's performance, that he had reviewed and discussed the PSR with his attorney, and that his attorney had answered his questions. (Case No. 09-cr-20051-BBD, Sentencing Tr. at PageID 70–71.) The judge considered Movant's mental illness and substance abuse in formulating his sentence. (*Id.* at PageID 93.) The judge

also allowed Movant to ask questions after she imposed his sentence. (*Id.* at PageID 87.) Movant did ask a question. He inquired if his federal sentence would run concurrently with his state case. (*Id.* at PageID 88.) The judge also explained Movant's right to appeal his sentence and asked him if he had any more questions. (*Id.* at PageID 88–89.) Movant said that he did not. (*Id.* at PageID 89.)

The criminal record established that Movant can carry out daily activities while taking his medication. The record in this civil case lacks any evidence suggesting that his mental illness worsened or that his medication dosage increased from September 2010 through September 2011. No evidence supports a causal connection between Movant's mental illness and his ability to file a timely federal habeas petition. Given the extraordinary nature of equitable relief, Movant must make more than generalized statements.

Candidly, Movant also admits he was unaware of the statute of limitations, although he contends the lack of awareness was because of his medication. (Reply, ECF No. 9 at PageID 41.) Ignorance of the law does not toll the limitations period. *Price v. Jamrog*, 79 F. App'x 110, 112 (6th Cir. 2003); *Harrison v. I.M.S.*, 56 F. App'x 682, 685–86 (6th Cir. 2003); *Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); *Brown v. United States*, 20 F. App'x 373, 374 (6th Cir. 2001) ("Ignorance of the limitations period does not toll the limitations period."); *cf. Jurado*, 337 F.3d at 644–45 (lawyer's mistake is not a proper basis for equitable tolling).

Based on the record here, Movant is not entitled to equitable tolling based on mental incapacity. Movant was not diligent in pursuing his rights and has failed to show that

extraordinary circumstances prevented his timely filing. This Court finds the § 2255 Motion is thus barred by the AEDPA statute of limitations.

The § 2255 Motion and record here "conclusively show[s] that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b). As a result, Movant's § 2255 Motion is DENIED.

## APPELLATE ISSUES

### I. Certificate of Appealability

There is no absolute right to appeal a district court's denial of a § 2255 Motion. *See* 28 U.S.C. § 2253(c)(1)(B). Instead, an applicant must first obtain a certificate of appealability ("COA") before he may appeal such a denial. *Id.* Court's should not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

A "substantial showing" is made when the movant shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). That said, this is an elevated standard and courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). If this Court issues a COA, it must specify the issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(3).

Movant has not made a substantial showing of the denial of a constitutional right because his § 2255 Motion is time-barred. No reasonable juror could debate the merits of this motion. So the Court DENIES a certificate of appealability here.

## II. Appellate Filing Fee

The Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status under Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952.

Rule 24(a) provides that a party seeking pauper status on appeal must first move in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Even so, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must move to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a) (4)–(5).

Here, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is thus CERTIFIED, under Fed. R. App. P. 24(a), that any appeal here would not be taken in good faith and leave to appeal in forma pauperis is DENIED. If Defendant files a notice of appeal, he must pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or move to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Within thirty (30) days. *See* Fed. R. App. P. 24(a) (4)–(5).

## **CONCLUSION**

For the reasons, the Court DENIES the § 2255 Motion and DENIES Movant a Certificate of Appealability. The Court further determines that any appeal would not be taken in good faith. This Court thus CERTIFIES that any appeal here would not be taken in good faith and leave to appeal in forma pauperis is DENIED.

**SO ORDERED**, this 19th day of August, 2019.

        s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE